IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SLINGSHOT PRINTING LLC,<br><br>               Plaintiff,<br><br>     v.<br><br>HP INC.,<br><br>              Defendant. | C.A. No. 6:20-cv-00048<br><br>**Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Slingshot Printing LLC ("Slingshot") files this Complaint against

Defendant HP Inc. ("HP") for patent infringement of United States Patent Nos.

7,484,823 and 7,594,708 (the "patents-in-suit") (Exhibits 1-2) and alleges as follows:

## NATURE OF THE ACTION

1.   This is an action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. §§ 1 *et seq.*

## THE PARTIES

2.   Plaintiff Slingshot Printing LLC is a Delaware limited liability company with its

principal place of business at 8455 Colesville Road, Suite 830, Silver Spring, MD 20910.

3.   On information and belief, HP Inc. is a Delaware corporation with a place of

business at 1501 Page Mill Road, Palo Alto, CA 94304.  On information and belief, since

May 1998, HP has been registered to do business in the State of Texas under Texas SOS

file Number 0012093906. On information and belief, since at least 2016, HP has had a place of business at 3800 Quick Hill Rd #100, Austin, TX 78728.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patents laws of the United States, 35 U.S.C. §§ 1 *et seq.*

5.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b).

6.   HP is subject to this Court's personal jurisdiction, in accordance with due process and/or the Texas Long Arm Statute because HP "[r]ecruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." See Tex. Civ. Prac. & Rem. Code § 17.042.

7.   This Court has personal jurisdiction over HP because, on information and belief, HP and its authorized resellers (or those acting on their behalf) and HP's customers committed and continue to commit acts of patent infringement in this judicial district. On information and belief, HP and its authorized resellers (or those acting on their behalf) make, use, sell, offer to sell and/or import HP inkjet products (including, without limitation, infringing inkjet printers, inkjet printheads, ink cartridges and associated accessories) in this judicial district and provide associated services in this judicial district. On information and belief, HP customers use HP inkjet products (including, without limitation, infringing inkjet printers, inkjet printheads, ink cartridges and associated accessories) in this judicial district.

8.   This Court has personal jurisdiction over HP because, *inter alia*, HP, on information and belief: (1) has committed acts of patent infringement in this judicial district, (2) has substantial, continuous, and systematic business contacts in this judicial district; (3) owns, manages and operates facilities in this judicial district; (4) enjoys substantial income from its operations, sales and services in this judicial district, (5) employs Texas residents in this judicial district and (5) solicits business and markets products and services in this judicial district including infringing products.   As such, HP has purposefully availed itself of the privileges of conducting business within this judicial district; has established sufficient minimum contacts with this judicial district such that it should reasonably and fairly anticipate being hauled into court in this judicial district; has purposefully directed activities at residents of this judicial district; and at least a portion of the patent infringement claims alleged in this Complaint arise out of or are related to one or more of the foregoing activities.

9.   On information and belief, HP maintains a significant physical presence in this judicial district. Specifically, HP has a corporate office at 3800 Quick Hill Rd #100, Austin, TX 78728 ("Austin Office"). On information and belief, HP has data centers located in Austin, Texas.



Source: Google Streetview of 3800 Quick Hill Road (attached as Exhibit 3)
(https://www.google.com/maps/place/HP+Inc./@30.4703733,-
97.6859262,3a,75y,90t/data=!3m8!1e2!3m6!1sAF1QipNp5EYyUhJS0qXzzgDwzf8UoOVa
hLlBmo2QpSjR!2e10!3e12!6shttps:%2F%2Flh5.googleusercontent.com%2Fp%2FAF1Qip
Np5EYyUhJS0qXzzgDwzf8UoOVahLlBmo2QpSjR%3Dw213-h120-k-
no!7i4000!8i2250!4m13!1m7!3m6!1s0x8644ce11dbcc242d:0x5804b8f52b061c45!2s3800+Qu
ick+Hill+Rd,+Austin,+TX+78728!3b1!8m2!3d30.4708993!4d-
97.6876364!3m4!1s0x8644ce11dbcc242d:0xeceb1885722ffa93!8m2!3d30.4703733!4d-
97.6859262).

10. On information and belief, HP uses the Austin Office as a regular and established place of business. A number of key HP employees work in the Austin Office including, but not limited, to a Director Supply Chain Planning, Senior IT Infrastructure Architect, and Cybersecurity Threat Intelligence Analyst.

11. HP's website lists fifty-one H-1B labor condition applications for people employed in Austin, Texas. *See* Exhibit 4 (http://www.hp.com/hpinfo/). Employees holding an H-1B visa are employed in a specialty occupation that requires "theoretical and practical application of a body of highly specialized knowledge . . . and attainment of a bachelor's or higher degree in the specific specialty. . . ." *See generally* 8 U.S.C. §

1184.  As such, HP employees in Austin, Texas are highly specialized and important to the operation of HP.

12. HP lists job opening on its website for positions in Austin, Texas.  *See* Exhibit 5 (https://jobs.hp.com/en-us/Search-Results?CloudSearchLocation=Austin%2C%20TX%2C%20USA&CloudSearchRadius=30&radiusUnit=Miles&prefilters=none&customFilters=%7B%22FullCountryName%22%3A%5B%22United%20States%22%5D%2C%22FullStateName%22%3A%5B%22Texas%22%5D%2C%22City%22%3A%5B%22Austin%22%5D%7D) (as of 1/14/20).



13. On information and belief, HP owns real estate in the Austin, Texas including properties at (a) 7501 N. Capital of Texas Highway, Austin, TX 78731, (b) 3301 Hibbetts Rd, Austin, TX 78721, (c) 14231 Tandem Blvd, Austin, TX 78728 and (d) 14219 Tandem Blvd, Austin, TX 78728.

14. HP operates the HP Partners First Program throughout the United States including in this judicial district. *See generally,* Exhibit 6 (HP Partners First Program Brochure).  This program is a partnership agreement between HP and retailers throughout the area that "is focused on being first in sales, speed and solutions, offering a comprehensive framework that encompasses a broad range of partner motions."



*See* Exhibit 6 at page 10.

15. The HP Partners First Program includes three tiers of partnership: Silver, Gold, and Platinum. At every level, the partners are required to enter into a formal Partner agreement with HP and provide sales certified printing, computing and supplies.  *Id.* at 11.  HP provides market development funds to Platinum members.  *Id.* at 15. According to HP, "HP places great value in partnership with reseller partners

contributing significantly towards HP's business revenue. Visibility of partner's

business are critical component towards fine-tuning of collaborative sales effort." *Id* at

44.

16. Through the HP Partners First Program, HP has hundreds of partners physically

located throughout this judicial district including, but not limited to, HP partners in

Waco, Austin, and San Antonio. HP's website provides existing and potential

customers with the ability to search for resellers based on cities or zip codes in this

judicial district.   A search on HP's website for Waco, Austin, and San Antonio provides

the names and locations of numerous HP resellers:



Austin, Texas



Waco, Texas



San Antonio, Texas

17. A search of the Austin, Texas area returns results for at least thirty-one partners

participating in the HP Partners First Program. Seven of those partners are platinum

partners who offer HP computing, printing, services and supplies to consumers in the
Austin area. A search of the Waco, Texas area returns results for at least eleven partners
participating in the HP Partners First Program. All of those partners are Silver partners
of the HP Partners First Program, and at least six of those silver members offers HP
computing, printing and supplies to consumers in the Waco area.  A search of the San
Antonio, Texas area returns results for at least forty-nine partners participating in the
HP Partners First Program.  Eleven of those partners are platinum partners who offer
HP computing, printing, services and supplies to consumers in the San Antonio area.

18. ImageNet Consulting LLC is listed as a Platinum Partner selling printing services
in Austin:



According to ImageNet Consulting LLC's website, the company offers several printers
for sale including the HP PageWide Pro MFP P57750 and HP PageWide Managed
E55650dn.  *See* Exhibit 7 (http://www.imagenetconsulting.com/products/copiers-
printers-scanners/workteam-printers/).

19. Texexpro LLC is listed as a Silver Partner selling printing services in Waco:



According to Texexpro LLC's website, the company offers several printers for sale including the HP OfficeJet 4650. *See* Exhibit 8 (https://www.texexpro.com/copy-of-products).

20. ARC Document Solutions LLC is listed as a Platinum Partner selling printing services in San Antonio:



According to Arc Document Solutions LLC's website, the company offers several printers for sale including the HP PageWide Enterprise Color 556dn Color Printer, HP PageWide Pro 750dw Color Printer, and the HP PageWide Pro 452dw Color Printer. *See* Exhibit 9 (http://shop.arcsupplies.com/store/c-527-ink-printers.aspx).

21. Consumers in this judicial district are also able to purchase infringing inkjet printers, inkjet printheads and ink cartridges directly from HP through its online

website and have products delivered in this judicial district.

https://store.hp.com/us/en.

22. HP sells its products including, without limitation, infringing inkjet printers, inkjet printheads and ink cartridges through stores located in this judicial district such as Best Buy, S.P. Richards Co., Staples Inc. and Frys Electronics.

23. On information and belief, HP has previously litigated patent infringement cases before this Court without contesting jurisdiction and venue. *See Neodron, Ltd. v. HP Inc.,* Case No. 1:19-cv-00873-ADA and *Iron Oak Technologies, LLC v. HP Inc.*, Case No. 17-cv-1068, W.D. Texas.

## BACKGROUND

### The Patents-in-Suit

24. The patents-in-suit are the result of Lexmark International, Inc.'s ("Lexmark") many years of researching, designing and developing innovative and proprietary inkjet printing technologies.

25. Lexmark was formed in 1991 when IBM divested a number of its hardware manufacturing operations. Lexmark became a leading developer, manufacturer and supplier of inkjet printers, ink cartridges and their associated supplies and services.

26. Lexmark's research and development activity focused on, *inter alia*, inkjet printers, ink cartridges and printer supplies.  Lexmark spent billions of dollars on research and development – $375 million in 2009, $423 million in 2008, $401 million in 2007, $371 million in 2006, $336 million in 2005, $312 million in 2004, $266 million in

11

2003, $247 million in 2002, $246 million in 2001, $217 million in 2000, and $184 million in 1999.

27. By April 2013, Lexmark held approximately 1,500 inkjet patents worldwide. Indeed, Lexmark's intellectual property was one of its major assets. Recognizing the tremendous value of Lexmark's intellectual property, in 2013, Funai Electric Co., Ltd. ("Funai") acquired Lexmark's inkjet printing technology and assets, including the patents-in-suit, for approximately $100 million.

28. Funai subsequently assigned Slingshot all rights, title and interest in the patents-in-suit.

**Inkjet Printer Technology**

29. The patents-in-suit relate to inkjet printer technology.

30. Inkjet printers have one or more printheads and multiple ink cartridges. The ink cartridges store different colors of ink (e.g., black, magenta, yellow, cyan) and provide the ink to the printhead(s) during printing.

31. Each printhead has hundreds of tiny nozzles through which tiny ink droplets are deposited onto a substrate (e.g., paper) during printing.  In particular, the printhead is located on a carriage that moves back and forth across the substrate and deposits ink on the substrate as the substrate advances through the printer. For certain printers, the printhead is located on the ink cartridges themselves.  For other printers, the printhead(s) are separate from the ink cartridges.

## United States Patent No. 7,484,823

32. On February 3, 2009, the USPTO duly and legally issued United States Patent No. 7,484,823 ("the '823 patent") entitled "Methods and apparatuses for regulating the temperature of multi-via heater chips" to inventors Lucas D. Barkley, Bruce D. Gibson, Eric S. Hall, David G. King and George K. Parish. A true and correct copy of the '823 patent is attached as Exhibit 1.

33. The '823 patent relates to, among other things, a chip for use with a printing device and a method of fabricating chips for use with a printing device.

34. The '823 patent is presumed valid under 35 U.S.C. § 282.

35. Slingshot owns all rights, title, and interest in the '823 patent.

## United States Patent No. 7,594,708

36. On July September 29, 2009, the USPTO duly and legally issued United States Patent No. 7,594,708 ("the '708 patent") entitled "Methods and apparatuses for sensing temperature of multi-via heater chips" to inventor Lucas D. Barkley, Bruce D. Gibson, Eric S. Hall, David G. King and George K. Parish. A true and correct copy of the '708 patent is attached as Exhibit 2.

37. The '708 patent relates to, among other things, a chip for use with a printing device and a method of fabricating chips for use with a printing device.

38. The '708 patent is presumed valid under 35 U.S.C. § 282.

39. Slingshot owns all rights, title, and interest in the '708 patent.

## CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 7,484,823

40. The allegations set forth above are re-alleged and incorporated by reference as if they were set forth fully here.

41. HP makes, uses, sells, offers to sell and/or imports inkjet printers in the United States that infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 5-9, 11, 12 and 15-17 of the '823 patent.  HP commits acts of patent infringement through the manufacture, use, sale, offer for sale and/or importation of at least the following products:

**Inkjet printers** including, without limitation, HP OfficeJet Pro 6978.

42. On information and belief, the inkjet printer listed above is sold with ink cartridges.  The ink cartridges can also be purchased separately from the inkjet printer. The ink cartridges are necessary for the operation of the inkjet printers and vice versa.

43. Infringement of the '823 patent by inkjet printers is demonstrated below using the HP OfficeJet Pro 6978 as an example.

44. HP makes, uses, sells, offers to sell and/or imports a chip (tricolor heater chip) for use with a printing device (e.g., HP OfficeJet Pro 6978 ("HP 6978")).



45. The tricolor heater chip of the HP 6978 has a first heater array positioned substantially adjacent a first via.



46. The tricolor heater chip of the HP 6978 has a second heater array positioned substantially adjacent a second via.



47. The tricolor heater chip of the HP 6978 has a region, positioned between the first heater array and the second heater array, and also positioned substantially adjacent to the first heater array and the second heater array.



48. The tricolor heater chip of the HP 6978 has a temperature sensing element operable to sense a temperature of the region.  The temperature being representative of the region.  The temperature sensing element is substantially centrally disposed with respect to the region and substantially adjacent to both the first heater array and second heater array. The temperature sensing element extends substantially the length of the first heater array and second heater array.



Temperature sensing element



Temperature sensing element





Temperature sensing element –
First end of heater array



49. The first heater array and the second heater array of the tricolor heater chip of the HP 6978 are operable to receive heating responsive to the temperature of the region sensed by the temperature sensing element. The received heating regulates the temperature of the region.

50. The tricolor heater chip of the HP 6978 has a third heater array positioned substantially adjacent the second via.



51. The tricolor heater chip of the HP 6978 has a fourth heater array positioned substantially adjacent a third via.



52. The tricolor heater chip of the HP 6978 has a second region, positioned between the third heater array and the fourth heater array, and also positioned substantially immediately adjacent to the third heater array and the fourth heater array.



53. The tricolor heater chip of the HP 6978 has a second temperature sensing element operable to sense the temperature of the second region. The temperature sensing element is substantially centrally disposed with respect to the second region and substantially adjacent to both the third heater array and fourth heater array.





54. The third heater array and the fourth heater array of the tricolor heater chip of the HP 6978 are operable to receive heating responsive to the temperature of the second region sensed by the temperature sensing element.  The received heating regulates the temperature of the region.

55. The temperature sensing element of the tricolor heater chip of the HP 6978 comprises a temperature sensing resistor (metal traces).

56. The temperature sensing element of the tricolor heater chip of the HP 6978 is positioned at least 300 microns from each of the first heater array and the second heater array.



57. The temperature sensing element of the tricolor heater chip of the HP 6978 is positioned substantially planar to each of the first heater array and the second heater array.

58. The tricolor heater chip of the HP 6978 has at least one control element (e.g., main controller board) operable to receive a temperature measured by the temperature sensing element and to heat the first heater array and the second heater array.



59. The temperature sensing element of the tricolor heater chip of the HP 6978 positioned between the first heater array and the second heater array is different than the second temperature sensing element positioned between the third heater array and the fourth heater array.

60. The first heater array and the second heater array of the tricolor heater chip of the HP 6978 are operable to receive non-nucleating heating (e.g., heating that does not reach a high enough temperature to make a steam bubble) responsive to the temperature of the region sensed by the temperature sensing element.

61. HP (or those acting on their behalf) performs the method of at least claims 11, 12 and 15-17 of the '823 patent when fabricating chips (as described above) for use with a printing device (e.g., HP 6978).

62. On information and belief, HP has been on notice of the '823 patent at least as early as the filing and service of the Complaint in Case No. 6:19-cv-00549.

63. On information and belief, at least since its post-filing knowledge of the '823 patent, HP knowingly encourages, and continues to encourage, customers and resellers to directly infringe one or more claims of the '823 patent, including by HP's actions that include, without limitation, instructing and encouraging customers to use (and resellers to use, sell and offer to sell) HP inkjet printers through HP's user guides/manuals, advertisement, promotional materials and instructions.

64. On information and belief, at least since its post-filing knowledge of the '823 patent, HP knows that the acts HP induced customers and resellers to take constitute

patent infringement and HP's encouraging acts result in direct infringement by customers and resellers.

65. On information and belief, HP instructs and continues to instruct customers and resellers to setup, use and troubleshoot HP inkjet printers including, without limitation, on HP's website which provides support on setting up and/or using these products.

66. On information and belief, HP's customers directly infringe at least claims 1, 2 and 5-9 of the '823 patent through their setup and use of HP inkjet printers.

67. On information and belief, HP's resellers directly infringe at least claims 1, 2 and 5-9 of the '823 patent through their setup, use, sale and offer for sale of HP inkjet printers.

68. On information and belief, HP is in violation of 35 U.S.C. § 271(b) and has been, at least since its post-filing knowledge of the '823 patent, indirectly infringing and continues to indirectly infringe at least claims 1, 2 and 5-9 of the '823 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, HP's customers and resellers) and possessing specific intent to encourage infringement by HP's customers and resellers.  The heater chip of HP inkjet printers is specifically configured according to the claims of the '823 patent, is a material part of the invention and does not have substantial non-infringing uses.

69. Slingshot has been damaged by the direct and/or indirect infringement of HP and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

## Count II – Infringement of United States Patent No. 7,594,708

70. The allegations set forth above are re-alleged and incorporated by reference as if they were set forth fully here.

71. HP makes, uses, sells, offers to sell and/or imports inkjet printers in the United States that infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, and 5-8, 9-10, and 14-15 of the '708 patent.  HP commits acts of patent infringement through the manufacture, use, sale, offer for sale and/or importation of at least the following products:

**Inkjet printers** including, without limitation, HP OfficeJet Pro 6978.

72. On information and belief, the inkjet printer listed above is sold with ink cartridges. The ink cartridges can also be purchased separately from the inkjet printer. The ink cartridges are necessary for the operation of the inkjet printers and vice versa.

73. Infringement of the '708 patent by inkjet printers is demonstrated below using the HP OfficeJet Pro 6978 as an example.

74. HP makes, uses, sells, offers to sell and/or imports a chip (tricolor heater chip) for use with a printing device (e.g., HP OfficeJet Pro 6978 ("HP 6978")).



75. The tricolor heater chip of the HP 6978 has a plurality of ink vias which are parallel to each other, with each having two longitudinal sides.



76. The tricolor heater chip of the HP 6978 has a heater array disposed adjacent each longitudinal side of the ink vias such that each ink via is associated with two heater arrays disposed adjacent the two longitudinal sides of the ink via.



77. The tricolor heater chip of the HP 6978 has a region disposed between two adjacent ink vias and wherein the region disposed between two adjacent ink vias includes two heater arrays each heater array being associated with their respective ink

via.



78. The tricolor heater chip of the HP 6978 has a temperature sensing element operable to sense a temperature of the region. The temperature being representative of the region. The temperature sensing element is substantially centrally disposed with respect to the region and substantially adjacent to both the first heater array and second heater array. The temperature sensing element extends substantially the length of the first heater array and second heater array and is set at a predetermined distance away from adjacent heater arrays.



Temperature sensing element



79. The temperature sensing element of the tricolor heater chip of the HP 6978 comprises a temperature sensing resistor (metal traces).

80. The temperature sensing element of the tricolor heater chip of the HP 6978 is positioned at least 300 microns from each of the first heater array and the second heater array.



81. The temperature sensing element of the tricolor heater chip of the HP 6978 is positioned substantially planar to each of the first heater array and the second heater array.

82. The tricolor heater chip of the HP 6978 has at least one control element (e.g., main controller board) operable to receive a temperature measured by the temperature sensing element and to heat the first heater array and the second heater array.



83. The tricolor heater chip of the HP 6978 has at least one edge and at least one region is disposed between one of the plurality of ink vias and the at least one edge.



84. HP (or those acting on their behalf) performs the method of at least claims 9-10, and 14-15 of the '708 patent when fabricating chips (as described above) for use with a printing device (e.g., HP 6978).

85. On information and belief, HP has been on notice of the '708 patent at least as early as December 11, 2019.

86. On information and belief, at least since its post-filing knowledge of the '708 patent, HP knowingly encourages, and continues to encourage, customers and resellers to directly infringe one or more claims of the '708 patent, including by HP's actions that include, without limitation, instructing and encouraging customers to use (and resellers to use, sell and offer to sell) HP inkjet printers through HP's user guides/manuals, advertisement, promotional materials and instructions.

87. On information and belief, at least since its post-filing knowledge of the '708 patent, HP knows that the acts HP induced customers and resellers to take constitute

patent infringement and HP's encouraging acts result in direct infringement by customers and resellers.

88. On information and belief, HP instructs and continues to instruct customers and resellers to setup, use and troubleshoot HP inkjet printers including, without limitation, on HP's website which provides support on setting up and/or using these products.

89. On information and belief, HP's customers directly infringe at least claims 1, 2, and 5-8 of the '708 patent through their setup and use of HP inkjet printers.

90. On information and belief, HP's resellers directly infringe at least claims 1, 2, and 5-8 of the '708 patent through their setup, use, sale and offer for sale of HP inkjet printers.

91. On information and belief, HP is in violation of 35 U.S.C. § 271(b) and has been, at least since its post-filing knowledge of the '708 patent, indirectly infringing and continues to indirectly infringe at least claims 1, 2, and 5-8 of the '708 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, HP's customers and resellers) and possessing specific intent to encourage infringement by HP's customers and resellers.  The heater chip of HP inkjet printers is specifically configured according to the claims of the '708 patent, is a material part of the invention and does not have substantial non-infringing uses.

92. Slingshot has been damaged by the direct and/or indirect infringement of HP and is suffering and will continue to suffer irreparable harm and damages as a result of this infringement.

## JURY DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Slingshot hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Slingshot respectfully requests that the Court enter judgment in its favor and against HP as follows:

a.      finding that HP has infringed one or more claims of the '823 patent;

b.      finding that HP has infringed one or more claims of the '708 patent;

c.      awarding Slingshot damages under 35 U.S.C. § 284, or otherwise permitted by law, including supplemental damages for any continued post-verdict infringement;

d.      awarding Slingshot pre-judgment and post-judgment interest on the damages award and costs;

e.      awarding cost of this action (including all disbursements) and attorney fees  pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

f.      awarding such other costs and further relief that the Court determines to be just and equitable.

Dated:  January 23, 2020                         Respectfully submitted,


                                                 */s/Raymond W. Mort, III*
                                                 Raymond W. Mort, III
                                                 Texas State Bar No. 00791308
                                                 raymort@austinlaw.com

                                                 THE MORT LAW FIRM, PLLC
                                                 100 Congress Avenue, Suite 2000
                                                 Austin, Texas 78701
                                                 Tel/Fax: 512-865-7950

                                                 *Of Counsel:*
                                                 Ronald M. Daignault (*pro hac vice* to be filed)
                                                 Chandran B. Iyer (*pro hac vice* to be filed)
                                                 Michael A. Siem (*pro hac vice* to be filed)
                                                 Jason S. Charkow (*pro hac vice* to be filed)
                                                 rdaignault@goldbergsegalla.com
                                                 ciyer@goldbergsegalla.com
                                                 msiem@goldbergsegalla.com
                                                 jcharkow@goldbergsegalla.com
                                                 GOLDBERG SEGALLA LLP
                                                 711 Third Avenue, Suite 1900
                                                 New York, New York 10017
                                                 Telephone: (646) 292-8700

                                                 Richard Juang (*pro hac vice* to be filed)
                                                 rjuang@goldbergsegalla.com
                                                 GOLDBERG SEGALLA LLP
                                                 8000 Maryland Avenue, Suite 640
                                                 St. Louis, Missouri 63105
                                                 Telephone: (314) 446-3367

                                                 Attorneys for Slingshot Printing LLC